Please all rise. Hear ye, hear ye. The Honorable Appellate Court of the Second Judicial District is now open. The Honorable Christopher M. Kennedy is invited. Good morning. Please be seated. Your Honor, the first case on the docket is Case No. 2-25-0006. People of the State of Illinois claim to be Appaloochee. Ms. Keon, Dean Funches, Family Appellate. Arguing on behalf of the Appellate, Ms. Beverly Jones. Arguing on behalf of the Appaloochee, Mr. John T. Barrett. All right, Counsel, Ms. Jones, you may begin when ready. Please feel free to adjust the microphone as needed. May it please the Court, my name is Beverly Jones. I'm appearing on behalf of the Appellate, Mr. Keon Funches. The trial court committed reversible error when it denied Mr. Funches ineffective assistance claims after a hearing on his motion for a new trial and improperly conducted the three-step procedure set forth in Bansing v. Kentucky during jury selection. I will first address the ineffective assistance claims and if I have additional time, I will address the Bansing claims. For the reasons of Mr. Funches' arguments, he requests this Court to grant him a new trial on the first issue and alternatively grant him a new Bansing hearing on the second issue. As it pertains to the first issue, the trial court improperly denied Mr. Funches a new trial despite trial counsel's ineffectiveness for failing to present an available and viable defense. What was that available and viable defense? That Mr. Funches, someone else shot Mr. Funches in the hand. And if that defense had been presented, wouldn't that be an admission that he made a false police report? Because when he was initially interviewed, he said these two other guys shot him. I mean, what sense does that make? Yes, yes. So we look at and with great deference to the trial lawyer's decisions and if they fall within a reasonable plane, a reasonable basis, then we must affirm. Yes, but however, the information that he told the police that someone else shot him outside of the high school. And all the physical evidence contradicted that story, right? No, I say what I said. Oh, go ahead. The physical evidence contradicted his story that he was shot by these two guys, right? I would say that given his testimony, if he was able to present testimony, that it would explain the evidence at trial. The DNA evidence showed that Mr. Funches' DNA was on the gun grip and on the bed sheets found in the apartment where the gun was recovered and also that there was gun hand residue on his hand. If he was able to testify, he would have explained that someone named DeAndre shot him in the apartment rather than the state's theory, which is that he was shot. With respect to the defendant not testifying, the trial court fully admonished the defendant that it was his right and that it's his decision and his decision alone to testify. And he was also reminded that if he did testify, he'd be subject to cross-examination, but also that if he did not testify, the jury would be instructed that his failure to testify could not be used against him. So he was fully admonished and he made his decision. He assured the court that he made the decision not to testify, right? Yes, but this was based off of faulty advice from his counsel. Counsel admitted that she did not review the DNA evidence, and so her, which is connected to his testimony, which would be connected to his testimony that someone else shot him. And because of that advice, that was the information. Mr. Fortas did not have the appropriate information to make an informed decision on whether or not to testify. I'm familiar with People v. Knapp, K-N-A-P-P, 2020, Illinois, 124-992, which was a post-conviction case, but in that case, the defendant alleged in his post-conviction petition that his lawyer talked him out of testifying. But in that case, as in this case, he was fully admonished, and the Supreme Court said that his allegation is completely rebutted by the record. So what do we believe? What the defendant said? Was he admonished? Or do we disregard, as the Supreme Court said in Knapp, that the transcript and the admonishments trump his post-trial allegations? Well, I think the difference here is that the record actually shows that Mr. Funchess was misinformed with being advised that he should not testify. Counsel admitted in the initial motion for a new trial that she did not review the DNA evidence, she did not adequately review the DNA evidence, which would have, which is connected to his testimony and would have explained why his DNA was on the gun, on the gun grip, and why he had gun residue on his hand. And we know that counsel did not adequately review the DNA evidence because she stated during opening statements in front of the jury, so they tested the gun, and they don't find Mr. Funchess' DNA on it. Even if we were to find that trial counsel's advice was deficient, where's the prejudice? Where's the light or the probability that the outcome of the trial would have been different, where the evidence is overwhelming that he shot himself? Well, I would argue that the evidence is not overwhelming, that actually the state's case was based largely on circumstantial evidence, and that we, so even with the DNA evidence and the gunshot residue evidence, we still don't have a clear explanation as to what exactly, how Mr. Funchess came in contact with this gun. And so his testimony would have been able to explain that. The physical evidence explains that he was handling the gun when it went off. But his testimony would, by him saying that someone else shot him. Do you have a case that stands for the proposition that if the defendant has an explanation, that his failure to testify on the advice of counsel is ineffective assistance of counsel? I'm sorry, can you repeat your question again? Do you have any case law to support your position that the mere fact that there's some evidence from the defendant that you're balancing the risk, he's a convicted felon, it's going to come in to impeach him, right? Plus his story makes no sense, and he gave an inconsistent story to the police when he was first interviewed. What we have here is the fact that he told, his initial story they told the police was a lie, and his criminal record was already submitted to the jury. That has already been laid out. And we also have this circumstantial case where it's, the state theorizes that he shot himself, but there is really no clear direct evidence showing that he shot himself. And so given that, it would not have hurt Mr. Funch's case at all to be able to present his testimony. Let me ask you this. During trial, did the defendant make any contemporaneous statement that he wished to testify, despite counsel's purported advice not to testify? During trial? Yeah. No, he did not. Then why isn't it waived? Why isn't this argument waived? Why isn't the argument waived? The defendant must make a contemporaneous statement that he wishes to testify. Well, his argument is waived because again, it's based on faulty advice. He didn't have the full information at the time that he had decided not to testify. And so, oh, I'm sorry. Pardon me. He was charged with being an armed habitual criminal, correct? Yes. What is relevant or material about him being hit with a bullet? If the DNA is on the gun, doesn't that indicate that it was in his possession, regardless of whether he shot himself or somebody subsequently shot him? No. So in order for there to be possession, there needs to be either actual possession or constructive possession. And we know that when he came into contact with police, he did not have possession of the gun at that time. And when it comes to constructive possession, his testimony that someone else shot him shows that somebody else had the gun in their possession. Not Mr. Funches. So are you suggesting that the DNA, his DNA that's on the gun was because he took the gun from the shooter? No, I'm suggesting that the shooter shot him at close range, which was evidence that the gun expert presented that the gun residue on his hand indicated that he was shot at close range. He was found not guilty, I believe, of possession or discharge, something in that nature? Yes. He was found not guilty, which is an indication that the jury wasn't quite persuaded by the State's theory that he shot himself. They acquitted him of two of the four charges, one of them being reckless discharge, which alleged that he shot himself. And the other one was reckless discharge, which alleged that he falsely reported that someone else shot him. And I'm sorry, reckless discharge alleged that he discharged a gun. And then he was also acquitted of disorderly conduct, which alleged that he... Was there anything inconsistent about the verdicts? So, yes, the fact that there's this distinction between the jury acquitting him of the charges that allege discharge rather versus him being convicted on the offenses that allege possession actually shows that the State's case was based on largely circumstantial evidence here. Because... But does that mean that the verdicts are inconsistent? It doesn't mean that the... So that means that Mr. Funch's testimony, had he been able to present it, would have been able to justify the DNA evidence and explain the possession element. So are you telling me that the jury verdicts were impeached by their inconsistencies? Or are you claiming that they were not inconsistent, they were consistent? I'm claiming that the... They were consistent because the jury didn't have the full story. Speak up a little bit louder, please. I'm sorry, that they were consistent because the jury did not have the full story. Or inconsistent in the sense that the jury did not have the full story. They did not have his testimony where he explained and justified why his DNA was on the gun. Would his explanation have been consistent with a cover-up? There was a cover-up. The scene was cleaned up. Right? The sheets in the garbage. You said, yes, it would be because... So he shoots himself or somebody shoots him and then he cleans it up and then... Was he going to call the police? What happened is Mr. Funches made these statements at his pretrial. He said that the reason why he lied to the police earlier was because he didn't want his girlfriend to lose her Section 8 house. And so that would explain some of the actions that occurred in this case. Counsel, you've got about a minute. I wanted to give you some time to address the second argument, if you wish. For my second argument, the trial court improperly conducted the third step procedure and set forth in Batson v. Kentucky during jury selection. The three-step procedure in Batson allows the court to determine whether a potential juror was removed for discriminatory purposes. This court's review on that issue is de novo. At the first stage, the defense makes a prima facie showing of purposeful discrimination and the court makes a determination of whether a prima facie showing was made. I can continue. Go ahead. And so, and at the second stage, the state provides a race-neutral reason for removing the potential juror and the defendant can rebut that explanation as pretextual. And at the third stage, the court makes an ultimate determination of whether there is evidence of purposeful discrimination. Here, the trial court collapsed the first and the second stage by failing to make a prima facie determination of whether there was purposeful discrimination. And the court also failed to conduct the third step, which is making an ultimate determination of purposeful discrimination. Therefore, Mr. French has asked this court to alternatively remand his case for a new Batson hearing. Thank you. All right. Thank you, counsel. You will have time on rebuttal. Mr. Barrett, you may proceed when ready. Good morning, counsel. And the court. John Barrett, arguing for the people of the state of Illinois. The trial court did not manifestly err in denying defendants amended motion for a new trial following a full evidentiary hearing. Defendants claims regarding ineffective assistance of counsel were riddled with problems that the trial court, you know, sussed out during that hearing, the facts underlying those claims, and the trial court did not manifestly err in ruling on the ineffective assistance issues. What weight, if any, should we give to trial counsel's admissions that her performance was deficient? Is she even qualified to give an opinion as to whether her performance was deficient? Counsel raised the issue of her ineffectiveness to preserve the issue so that defendant could pursue that on appeal if necessary. But it's not a stand-alone definitive declaration that this was a constitutional violation. She was preserving these issues for appeal. Now, Ron Dolak was appointed and amended the motion for a new trial. And the trial court ultimately looked at those ineffectiveness issues and did not find any ineffectiveness here. One of the things I'd like to correct, counsel had mentioned that defense counsel did not review the DNA evidence prior to trial. That's not true. Defense counsel did receive the DNA evidence prior to trial and had reviewed it. Well, there was some disagreement, but the trial court found that she did receive the evidence. She received the evidence, she had reviewed the evidence, and then misspoke during her opening statement. It was an isolated problem. It was an unfortunate thing, but, you know, the jury was instructed that opening statements are not evidence or to be used as evidence. And in this case, the jury made a reasoned decision based on the DNA evidence itself. There's nothing that would have been offered by the defense to counter the DNA evidence. There was no experts that would be presented on behalf of the defendant. There was no evidence to undermine the people's DNA evidence that they presented. These factors cut the other way, right? I mean, the statement in the opening statement, the statement that there was no DNA found, I mean, doesn't that reflect a failure to review or understand what the evidence was? And then the failure to call witnesses. I mean, this only favors the argument that it was ineffective. No. Counsel did not give a perfect performance in her opening, and it was unfortunate that she misspoke about that. When she reviewed it, there was, she had not, she did not make the connection that the DNA was found on the hand grip. That part was overlooked, apparently, from her review of the evidence. But she had reviewed it, and it was an unfortunate... She made some comment that it was on the edge. Right. She thought she believed it. So she believed that a proximity, he was in close proximity to the weapon, this phantom third party was pointing the gun at him, and that maybe some of it was transferred onto the barrel of the gun. But not, she didn't believe that it was on the hand grip itself. So what we had was a compelling and overwhelming case. This is not a circumstantial case. DNA evidence is direct evidence. We had a DNA expert testify as to the DNA on the hand grip itself. And the chances of defendant's DNA being one in 340 nanillion on the hand grip in that manner was direct evidence that he had held the gun, that he was in possession of the gun, and that where the gun was ultimately discovered on top of the kitchen cabinets, he had to have put it there. Even without the DNA, it was compelling? Yes, even without the DNA. How about counsel's argument that the trial court erred on the ruling on a bashing claim? The issue with the bashing claim is that the trial court didn't use magic words. She's looking for magic words here, and we don't need magic words. We don't need, I am finding a prima facie case. The trial court didn't use the words, I am finding a prima facie case. The trial court acknowledged that the defendant was the only minority member on the jury pool. Prospective jury pool. Based on being the only minority in that circumstance, this wasn't a situation where you had a mix on the jury, and there was more investigation into what was occurring. It was apparent. Moving to ask the state, what is this race-neutral reason? Do you have a race-neutral reason? And then ruling on the ultimate facts that the trial court was aware of, which was that there were omissions in the questionnaire. Several criminal contact, what's that? The omissions weren't in the questionnaire, it was in the answers. Yes, the answers to the questionnaire. So based on the state's interest in having an honest jury pool that followed instructions, that was a valid reason to strike the juror and not her minority. Historically, that has been a valid reason, correct? Yes. What indication can be drawn from the fact that the defendant wasn't found guilty on all charges? You're asking if the split verdict is inconsistent? I thought I heard you say that this was an open and shut case and that the evidence was manifest that there was guilt. And so I'm thinking to myself, if that statement is all-inclusive, it seems to be inconsistent with what the verdicts were. The evidence with respect to the DNA on the gun and the direct evidence that was presented on possession of the gun was overwhelming. How would you describe the evidence relative to whether or not he shot or he shot himself? Well, it's clear that the defendant, based on the inferences from the apartment and what the investigators found when they went there, the defendant had already lied to them about being shot on the street near the high school. And they found blood all over the walls, all over the floor. Clearly the shooting occurred in the apartment. And the gun was found above, hidden on top of the kitchen cabinets. So we know the defendant possessed the gun. But do we know that the only person in the apartment was the defendant? Because to my mind, you have to exclude all others unless he admits that he was the one that shot himself. You have to exclude all others in the world from being a perpetrator and shooting them. And the DNA. And so you're claiming that the lack of any DNA from a third party is indicia of a self-imposed or inflicted wound? Yes. And is that based upon expert testimony that says that it's almost impossible to selectively remove DNA from an implement?  It's got multiple or X number of samples. The forensic scientist, Heather May, testified that the probability of a random unrelated individual matching the DNA profile on the grip of the gun was approximately 1 in 340 non-million. So essentially it wouldn't be possible for anyone else to have contributed to that DNA. But aren't there more than 340 million people on earth? You know, I'm not a math major, so I probably need to go back to school. So was it a civilian or a non-citizen that did this? Another thing that I wanted to clear up that's also important is that there was an argument about defense counsel being deficient for not having defendants testify because there was this viable defense. So the impeachment evidence that was coming in, there were two additional prior convictions that would come in expressly for impeachment purposes. And those were more serious offenses than the underlying offenses that were used to establish the elements of armed habitual criminal. We had a Class 2 robbery and we had a 2021 unlawful possession of a weapon by a felon, which is also a Class 2 felony, that served as the elements for armed habitual criminal. Had a defendant testified, you would have been subject to impeachment on Class 1 felonies, aggravated robbery from 2010 and aggravated robbery from 2014. So those are more serious weapons offenses that were going to come in that he wouldn't have been exposed to otherwise. So that in and of itself was a valid reason not to have a defendant get on the witness stand. Not to mention the fact that his story just didn't make any sense. And then a couple of other points I wanted to make about the... Batson? What's that? Batson analysis? Not the Batson analysis. My thoughts were going in two different directions as I was speaking just now. I'm sorry. What was I about to say? We're on the ineffective assistance. Well, I think you already covered the Batson analysis because of the statement that you made that the questionnaire was wrong when I suggested to you that the questionnaire wasn't wrong. Right. There was no clear or obvious error there. About whether or not to stipulate to prior offenses. An attorney strategically chooses not to stipulate to control the narrative. So if they don't stipulate, they can prevent the jury's imagination from running wild about this offense is far worse than it actually is. So during trial, it can actually be a strategy not to stipulate and allow those to come in as less serious than the jury might otherwise take them to be. And that would support not stipulating in this case. Now, conversely, if the defense counsel chooses to stipulate, that allows them to move past that evidence fairly quickly and not dwell on it. But either way, a post-trial counsel will always second-guess trial counsel on either if they stipulate or if they don't. That's always going to be second-guessed after the trial. The facts of this case show that clearly stipulating the evidence wasn't conducive to improving the defendant's situation. The defendant testified during the hearing on the motion for new trial that counsel told him don't testify at all, no matter what, because he had tattoos on his face. But the jury would have seen the tattoos anyway, right? Yeah, and I mean, that is a comment that the defendant made about what counsel told him. Again, we're looking at what the trial court was assessing, and that's not a credible defendant. I mean, did trial counsel really make that advice to him? I'm not sure. I mean, I don't think the trial court was sure. Yes, I have one question. I asked the appellate defender relative to whether or not the verds of not guilty and guilty were inconsistent. Do you wish to comment on that or not? They were not inconsistent. The acquittals on the lesser charges, you have inconsistent mental states on those. You have reckless mental state, and you have annoying mental state. And the evidence the jury saw on the lesser charges, the defendant was shot and bleeding and being taken to the hospital on an ambulance. How aware was he when he's bleeding and making, you know, talking with the authorities? Maybe they just didn't want to touch the subjective intent there. Are you implying that the not guilties were lesser included? They're less serious. Less serious. Less serious. And the jury obviously, based on this evidence, it looks like they followed the rule of lenity. They convicted him on a more serious charge and gave him a pass on the others. Yeah. And then in terms of recklessness, when the police were investigating, they said they were investigating an accidental shooting when they showed up to Ilia Griffin's apartment. So, you know, the whole investigation, you know, for an accident, that's not recklessness. You know, to achieve recklessness, that's a higher mental state than accidental. So there was some even just conflicting evidence from what they heard from police. So I think in terms of these lesser offenses, you know, the jury was discerning and they decided, okay, we're not going to convict on those, but we have very strong, overwhelming evidence here on the possession. So they convicted on the possession. Thank you, counsel. Ms. Jones, you may proceed with rebuttal. Thank you. Just a couple additional points on rebuttal. I want to address opposing counsel's argument with regard to the ineffective assistance issue when it comes to the convictions that would have been, that could have been introduced through impeachment. And then opposing counsel also stated that, mentioned the lie that was told to the police, Mr. Fuchs told to the police. Again, this information had already been admitted at trial. His criminal history, his prior convictions have already been admitted. The fact of what he told police earlier about someone else shooting him in the car, that has already been admitted. And so there's nothing new that would be incriminating to Mr. Fuchs. And so his, to present his defense would only explain and justify the DNA evidence that we have here. And also with regard to counsel's admission. Counsel's admission is relevant here because it speaks to her trial strategy. She said in the initial motion for a new trial that she did not call Mr. Fuchs to testify, that she should have, that she did not adequately review the DNA evidence, and that that was not a strategic decision to do so. And so her admissions are relevant here. So your position is that if the defendant had testified, there would have been a reasonable probability that he would have been acquitted? Is that your position? Yes. Opposing counsel mentions that the evidence was overwhelming. But our standard for prejudice is, is there a reasonable probability here? Traditionally, advice of counsel not to testify, if there's reasons in the record why someone should not testify, should we not defer to trial counsel's decision? The reason, I know one of the reasons being that Mr. Fuchs has had tattoos, or there was something with his appearance. But as, Justice, you mentioned, the jury is already seeing him in court. Again, just like the impeachment of the convictions, just like the lie that was previously said, all of this was presented to the jury. All of this is seen in front of the jury. And so allowing Mr. Fuchs to testify would not further But he told the court it was his decision and his decision alone not to testify. Yes, again, based on the faulty advice. Counsel could not have given him adequate advice on that because she did not fully review the evidence. The enlargements went on for like, I think, two pages. The trial court was very specific about the defendant's right to testify, that he would be cross-examined, and it is his decision and his decision alone. Yes, but he's also, he has counsel here. He has counsel to advise him and provide him with all the information. And the court inquired, did you have enough time to discuss this with counsel? And he said yes. Yes, based on the information that counsel had given him. And then I just also wanted to go to the Batson claim. Opposing counsel had mentioned that there are no magic words that trial counsel needs in order to make a determination. And I would say yes, but we also have case law that provides the trial court with various factors to consider. When making a determination. And so with regard to the court failing to make a prima facie determination, there are factors that the courts, that the case law provides for the court to consider. And the court didn't consider any of these factors. The court only mentioned that the potential juror was a minority. And also when it came to the ultimate determination of purposeful discrimination, the court said it was basing its decision on the state's race-neutral explanation. It did not say anything about purposeful discrimination. And also case law provides certain important factors for the court to consider when determining ultimate, determining purposeful discrimination, such as the potential juror's demeanor, and the credibility of the prosecutor. May I finish my? Yes, the court did go into detail as to what occurred, what the potential juror had stated in her answers. But he did not reference anything with regard to what he thought about her demeanor, and he did not reference anything with regard to what he thought about the prosecutor's credibility. And because of that, the court failed to make an ultimate determination of purposeful discrimination. Defensive counsel or defense counsel confessed error, basically saying I screwed up. Did she not? Yes. Based upon the record in the case, did she ever explain how her screw-up altered the outcome of the case, or created reversible error, or resulted in a defective defense? She explained that she could not make a strategic decision with regard to whether Mr. Funches could testify because she did not adequately review the DNA in the motion for her. Well, my point is, is she saying she never adequately reviewed it, or is she saying she didn't adequately review it originally? Because hopefully she adequately reviewed it at some point in time during this case, correct? Correct, but by that point, the trial had already gone on. The misstatement that she said before the jury had already occurred, and Mr. Funches had already... I'll buy the argument that maybe time had run out, just like your time here, so to speak. But what did she say that indicated that there was prejudice, i.e., that the result would have been any different? She mainly spoke about her deficient performance in the motion for a new trial, but her performance... There's prejudice here, because with regard to not presenting Mr. Funches to testify, it prevented the jury from hearing a counter-narrative that would have influenced its determination of Mr. Funches' guilt or innocence. And then also with regard to the failing to adequately review the DNA evidence, her misstatement in front of the jury diminished her credibility, and it hindered her ability to present a cohesive defense, which led to her not calling Mr. Funches to testify. Are you claiming that she would have been able to impeach the clinical or scientific conclusion that the DNA that was exhibited or found on the weapon wasn't the defendant's? No. So we know that his DNA was found on the gun grip, but the jury only heard the state's unchallenged theory that he shot himself. No one saw Mr. Funches shoot himself, and when he came into contact with the police, he did not have possession of a gun. And so his defense would have provided an alternative explanation for why his DNA was found on the gun grip. Did the jury find that he was guilty of a discharge? No. Does that then indicate that there was no ineffective representation to the extent that, as you just pointed out, the possession was there, but not necessarily the discharge? No. I believe that the acquittal of the two charges actually shows that this case, that this case was based on largely circumstantial evidence, and that there's no clear explanation as to why Mr. Funches' DNA was on the gun grip, and that had counsel presented his defense, that would have provided an explanation that would have spoke to the possession element. What explanation would that be? That someone named DeAndre shot him in the apartment. And we don't know who DeAndre was. And if the defendant had said that, then he would be admitting that he made a false police report. Yes. The lie was already out there. The jury already... The fact that the defendant possessed that weapon is essentially irrefutable, right? That's not for you. I just said it. That is refutable, because DeAndre, he's saying that DeAndre had the gun. And at the end of the day, it would be up to the jury to determine whether they find his testimony credible or not. All right. Thank you, Ms. Jones and Mr. Barrett.